IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DIANAH ROSE-STANLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:15CV00007 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **COMMONWEALTH OF VIRGINIA, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Jeremy B. O'Quinn, The O'Quinn Law Office, PLLC, Wise, Virginia, and Richard D. Kennedy, Kennedy Law Office, P.L.L.C., Wise, Virginia, for Plaintiff; G. William Norris, Jr. and Liza S. Simmons, Office of the Attorney General, Richmond, Virginia, and Katie DeCoster, Office of the Attorney General, Abingdon, Virginia, for Defendants.*

The plaintiff in this case asserts claims of sexual harassment, sex-based discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 and the Virginia Human Rights Act. Because I find the Complaint fails to state a claim upon which relief can be granted, I will grant the defendants' Motion to Dismiss.

I.

The Complaint alleges the following facts, which I must accept as true for purposes of deciding the Motion to Dismiss. The plaintiff, Dianah Rose-Stanley ("Stanley"), is employed by the Virginia Department of Corrections ("VDOC") as a nurse. Each of the individual defendants was in a position of authority over

Stanley at the time of the alleged events. Defendant Harold W. Clarke is the Director of VDOC. Defendant Gerald K. Washington is the former Operations Manager for the Western Region of VDOC. Defendant Mary Gilbert is the Director of Nursing for the Western Region of VDOC. Defendant Vicki Phipps is the Director of the Medical Department at Red Onion State Prison ("Red Onion"), a VDOC facility, and supervised Stanley. Defendant Rebel Deel is the Nursing Supervisor at Red Onion and was Stanley's immediate supervisor.

In the fall of 2013, Stanley participated in three dialogue meetings that were designed to allow lower level staff members to voice concerns to management. Warden Randall Mathena held such a meeting on October 24, Gilbert held one on November 4, and the entire medical department held one on November 19. At all three meetings, Stanley complained about Phipps and how the medical department was being managed. One concern raised by medical department employees was that little notice was given when employees were required to change shifts or duties. At the November 19 meeting, the employees were told they would be given at least three months' notice in the future.

Stanley's comments at the meetings caused tension between Stanley and her supervisors, Deel and Phipps. At the time, Stanley was working as the pharmacy nurse, which was considered to be the best nursing job at Red Onion because it requires nine-hour rather than twelve-hour shifts with no evening or weekend

2

hours, and it involves less inmate contact than the other nursing positions. Historically, the pharmacy nurse position has been assigned to the nurse with the most seniority. With approximately twenty-four years of service, Stanley was the most senior nurse at Red Onion at the time.

On March 14, 2014, nearly four months after the last of the three meetings, Phipps removed Stanley from the pharmacy nurse position with no notice and directed that she return the next day to twelve-hour shifts as a building nurse. This reassignment meant that Stanley would have to work varying shifts and weekend hours. According to Stanley, the reassignment was an act of retaliation for Stanley's complaints to management about Phipps. Stanley received no explanation for the reassignment.

Stanley told Deel and Phipps that she planned to complain to Warden Mathena about her reassignment. In response to this statement, Phipps and Deel began spreading rumors about an inappropriate relationship between Stanley and Mathena that they claimed resulted in favorable treatment of Stanley. In late March, Mathena held a meeting to discuss these accusations. Phipps, Deel, and Stanley were all present, along with a human resources officer and another individual whose role is not specified. During the meeting, Mathena instructed everyone to stop discussing the alleged inappropriate relationship and told Stanley not to use his name to imply favoritism.

3

Despite the meeting, rumors continued to spread regarding an inappropriate relationship between Mathena and Stanley. Eventually, Washington, who was the Regional Operations Manager at the time, asked Mathena about the alleged relationship. On April 9, 2014, Washington called Stanley and began to question her about the relationship. The conversation made Stanley uncomfortable. In training sessions she had attended, Stanley had been taught that when discussing sexual matters, a female should question a female and a male should question a male, and a witness should always be present for such conversations. To her knowledge, no witness was present during the phone call she received from Washington, though there were female supervisors at Red Onion who could have served as witnesses or questioned Stanley. During the conversation, Washington asked Stanley directly whether she had ever had sex with Warden Mathena. The question shocked and offended Stanley, and she replied that such information was none of his business. Stanley found the conversation to be intimidating and inappropriate, particularly given that she did not know Washington. Washington did not apologize for the question; instead, he told her she was immediately being transferred to Keen Mountain Correctional Center ("Keen Mountain").

Keen Mountain is located more than one hour and fifteen minutes from Stanley's home, while Red Onion is located approximately twenty-five minutes from her home. Stanley had previously worked at Keen Mountain, but in 2002,

4

she had asked to be transferred to Red Onion so she could be closer to her family and better able to care for her mother. Her request was granted, and she had worked at Red Onion since 2002. Mathena had been Mathena at Red Onion since 2011. Mathena was not transferred to a different facility as a result of the alleged inappropriate relationship.

Washington called Stanley again on April 11, 2014. Once again, no witness was present for the call. Washington told Stanley her transfer was temporary, but he did not provide her with a date when she could expect to be transferred back to Red Onion.

Stanley contends she was transferred because she is a female, and Mathena was not transferred because he is a male. Stanley insists that she was not involved in any inappropriate relationship with Mathena, yet she had to tell her family that she was transferred due to allegations of an alleged sexual relationship. She was embarrassed and experienced emotional distress and marital discord. She alleges she has incurred a financial loss due to the cost of her longer daily commute. Stanley remains employed by VDOC but has not yet been transferred back to Red Onion, despite the fact that Mathena no longer works at that facility.

Stanley filed an employee grievance regarding these incidents. On July 14, 2014, defendant Clarke denied her a hearing. Stanley asked the Office of Employment Dispute Resolution to overrule that determination and grant her a

5

hearing, but it denied her request on August 18, 2014. She filed a claim with the Virginia Department of Human Resource Management ("DHRM") on July 7, 2014, but she never received a response. Also on July 7, 2014, Stanley filed a claim with the federal Equal Employment Opportunity Commission ("EEOC"). The EEOC sent Stanley a right to sue letter on March 16, 2015. She filed the instant suit on May 29, 2015.

All of the Complaint's claims are asserted against all of the defendants. Count I asserts a claim of sex-based discrimination under both Title VII of the Civil Rights Act of 1964 ("Title VII") and the Virginia Human Rights Act ("VHRA"). Count II alleges a hostile work environment claim under Title VII and the VHRA. Count III asserts a claim of disparate treatment under Title VII and the VHRA. Count IV asserts a claim of retaliation under Title VII and the VHRA. Count V asserts a claim of discrimination and hostile work environment under 42 U.S.C. § 1983. Stanley seeks back pay, reinstatement, attorneys' fees and costs, a minimum of $300,000 in compensatory damages, and a minimum of $300,000 in punitive damages.

The defendants have moved to dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim.[1] First, they argue that Stanley has

---

[1] Although the defendants have moved to dismiss based on lack of subject-matter jurisdiction, none of the asserted grounds for dismissal are jurisdictional. Instead, the arguments raised by the defendants all address whether the plaintiff has pled any viable

6

failed to state any claim under the VHRA because VDOC employs more than 15 people, Stanley was not discharged, and the VHRA creates no cause of action against anyone other than a plaintiff's employer. The defendants also contend that the Title VII claims against the individual defendants must be dismissed because they are not "employers" under Title VII. The defendants assert that the Complaint fails to state viable claims of discrimination or disparate treatment because there is no allegation that her first reassignment was based on her gender and her transfer to Keen Mountain was not an adverse employment action. The defendants further argue that the plaintiff has not stated a cognizable claim of hostile work environment because the allegations do not show an objectively hostile or abusive environment. Regarding the retaliation claim, the defendants contend that the Complaint fails to allege either a protected activity or an adverse employment action. The defendants argue that the § 1983 claim must fail because the Commonwealth and DOC are not "persons" subject to liability under § 1983, and the allegations fail to show that the defendants violated any constitutional

---

claims. Therefore, it is appropriate to decide the defendants' motion under Rule 12(b)(6) rather than Rule 12(b)(1).

7

right. The individual defendants also claim that they are entitled to qualified immunity. These issues have been fully briefed and are ripe for decision.[2]

II.

In order to survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

In the context of employment discrimination claims, "a plaintiff is not required to plead facts that constitute a prima facie case" in order to survive a motion to dismiss. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002)).

---

[2] I will dispense with oral argument because the facts and legal contentions have been adequately presented in the materials before the court and oral argument would not significantly aid in the decisional process.

8

Nevertheless, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Coleman*, 626 F.3d at 190 (quoting *Twombly*, 550 U.S. at 555). Although a complaint need not contain detailed factual allegations, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The defendants are correct that all of Stanley's VHRA claims must be dismissed. First, the VHRA only creates a private cause of action against employers with more than five but fewer than fifteen employees. Va. Code Ann. § 2.2–3903(B). The Complaint does not allege (and could not allege) that VDOC employs fewer than fifteen employees. Second, the VHRA only creates a private cause of action for former employees who were discharged from employment. Va. Code Ann. § 2.2-3903(C). It is clear from the Complaint that Stanley was not discharged. Furthermore, all of Stanley's claims based on federal law fail for the reasons articulated below. Because she has not stated any viable claim under federal law, she cannot claim an unlawful discriminatory practice under the VHRA. *See* Va. Code Ann. § 2.2–3901 (noting that "[c]onduct that violates any Virginia or federal statute or regulation governing discrimination on the basis of . . . sex . . . shall be an 'unlawful discriminatory practice' for the purposes of"

9

the VHRA). Therefore, Counts I-IV must be dismissed to the extent they assert claims under the VHRA.

Stanley's Title VII claims against the individual defendants must be dismissed because "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). While Stanley has named the individual defendants in both their individual and official capacities, a suit against an agent of an employer in his official capacity is in essence a suit against the employer, and here, Stanley has named her employer directly. The Title VII claims against the individual defendants in their official capacities will therefore be dismissed as well because they are duplicative. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004).

Counts I and III are essentially the same. In Count I, Stanley alleges sex-based discrimination under Title VII, and in Count III, she alleges disparate treatment under Title VII. "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')."[3] *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). In other words, disparate treatment is a subcategory of discrimination prohibited by Title VII. "The ultimate question in every employment

---

[3] Stanley does not assert a disparate impact claim in this case.

discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000).

A plaintiff claiming unlawful discrimination under Title VII who does not offer direct evidence of discriminatory intent has the burden of establishing that: (1) she is a member of a protected class; (2) she was qualified for her position and her performance was satisfactory; (3) despite her qualifications, she suffered an adverse employment action; and (4) she was replaced by an individual outside of the protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Here, it is clear that Stanley is a member of a protected class, and at this stage of the proceedings, it would be premature to evaluate her qualifications and performance. The problem for Stanley is that as a matter of law, her transfer from Red Onion to Keen Mountain was not an adverse employment action.

"An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal quotation marks, and citations omitted). "The mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action." *Id.* at 376 (citing *Von Gunten v. Maryland*, 243 F.3d 858, 868 (4th Cir. 2001)). Unless the change has caused a significant detriment, "'reassignment to a new position

11

commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position.'" *Id.* (quoting *Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999)). "[I]ncurring small, additional commuting expenses is not the type of adverse employment action that is cognizable under Title VII." *Jensen-Graf v. Chesapeake Emp'rs' Ins. Co.*, No. 14-2081, 2015 WL 3916783, at *2 (4th Cir. June 26, 2015) (unpublished).

Stanley alleges that she worked at Keen Mountain until 2002, when she requested and was granted a transfer to Red Onion for personal convenience. The additional commuting time required now that she has been transferred back to Keen Mountain cannot be considered unreasonable given that Stanley voluntarily made the same daily commute for a number of years in the past. Stanley does not claim that any change in salary, title, or job responsibilities accompanied her transfer from Red Onion to Keen Mountain. The facts alleged simply do not show an adverse employment action on which Stanley could base a sex discrimination claim.

Stanley maintains that her reassignment from the pharmacy nurse position to a building nurse position was an adverse employment action. Even if that were true, her discrimination claims would still fail because she alleges she was removed from the pharmacy nurse position for reasons unrelated to her gender.

12

Nothing in the Complaint implies that the reassignment was based in any part on the fact that Stanley is a woman.

Stanley also fails to state a plausible hostile work environment claim under Title VII. To prevail on a Title VII claim of a hostile work environment, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . [gender]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer–Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 277 (4th Cir. 2015) (citation omitted). "Whether the environment is objectively hostile or abusive is judged from the perspective of a reasonable person in the plaintiff's position," and may be determined based on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks and citations omitted). Further, "the status of the harasser may be a significant factor," *id.* at 278, because "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 763 (1998).

Stanley bases her hostile environment claim on rumors about an alleged sexual relationship she had with Mathena, along with questions posed by

13

Washington about that relationship. All of these events occurred over a period of about three weeks. These allegations do not rise to the level of objective hostility or abuse. The Supreme Court has repeatedly stated that "'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998)). Rumors are commonplace in the work environment, and Washington had the right to investigate those rumors to determine whether Mathena was improperly favoring Stanley. While the rumors and resulting conversation might have made Stanley uncomfortable, they did not create an objectively hostile and abusive work environment. The facts pled simply do not state a plausible claim for hostile environment sexual harassment.[4]

Stanley's claim of retaliation also fails as a matter of law because nothing in the Complaint amounts to protected activity under Title VII. The anti-retaliation provision of Title VII prohibits employers from "'discriminating against any of their employees because the employees have opposed any practice made an unlawful employment practice by Title VII.'" *Coleman,* 626 F.3d at 190

---

[4] I also question whether the rumors about the alleged inappropriate relationship were based on the plaintiff's gender. According to the Complaint, the rumors concerned both Stanley, a female, and Mathena, a male. In that sense, the rumors can be construed as gender-neutral. Likewise, the Complaint alleges that Washington questioned both Stanley and Mathena about the alleged affair.

14

(alterations omitted) (quoting 42 U.S.C. § 2000e–3(a)). The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. *Id.*

Protected activities include both opposition to an unlawful employment practice and participation in an investigation or proceeding regarding an unlawful employment practice. 42 U.S.C. § 2000e-3(a). For purposes of Title VII, opposition encompasses an employee's complaints to her employer that she believes the employer has engaged in unlawful discrimination. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416-17 (4th Cir. 2015). "Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)).

Stanley alleges that during various meetings in the fall of 2013, she complained about the management of the nursing department. Specifically, she complained that employees were not being given sufficient notice in advance of changes to their duties or schedules. She further alleges that prior to her transfer to Keen Mountain, she had threatened to complain to Warden Mathena about her reassignment to a building nurse position. These statements to supervisors do not

15

amount to protected activity because Stanley never mentioned any perceived sex-based discrimination. In her brief, Stanley claims that she opposed the inappropriate questioning by Washington. However, I find that Stanley's response to Washington that her relationship with Mathena was "none of his business," (Compl. ¶ 50, ECF No. 1), does not amount to opposition activity under Title VII. Stanley does not allege that she told Washington or anyone else that she believed she was being subjected to sexual harassment or discrimination on the basis of her sex.

The only instances of protected activity averred in the Complaint are Stanley's employee grievance and later filings with the Office of Employee Dispute Resolution, DHRM, and EEOC, which all occurred after her transfer to Keen Mountain. Therefore, the transfer could not possibly have been made in retaliation for these protected actions. Even if Stanley had engaged in protected activity, for the reasons stated above, she suffered no adverse employment action. Because she cannot establish any of the required elements of a retaliation claim under Title VII, Count IV of the Complaint must be dismissed.

Stanley's final count, which asserts a violation of 42 U.S.C. § 1983, also fails to state a claim. As an initial matter, Stanley's § 1983 claim against VDOC must be summarily dismissed. It is well settled that a state and its governmental entities cannot be sued under § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S.

58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). While the prison officials named as defendants are subject to suit under § 1983 in their individual capacities, I find that the Complaint fails to state a viable § 1983 claim against any of them.

The elements of a claim of discrimination under § 1983 mirror the elements of a Title VII claim. *McCray v. Pee Dee Reg'l Transp. Auth.*, 263 F. App'x 301, 305 (4th Cir. 2008) (unpublished); *Giarola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285-86 (4th Cir. 1985). For the same reasons her Title VII claim fails, Stanley's § 1983 claim also fails.

Given that the Complaint's allegations fail to state any viable claims, it is unnecessary to resolve the individual defendants' assertion of qualified immunity.

III.

For the foregoing reasons, it is **ORDERED** that the Motion to Dismiss (ECF No. 10) is GRANTED. A separate judgment will be entered forthwith.

ENTER: November 5, 2015

/s/ James P. Jones
United States District Judge

17